UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI

| | |
|---|---|
| BUSH TRUCK LEASING, INC.<br>6961 Cintas Boulevard<br>Mason, OH 45040<br><br>　　　　　　　Plaintiff,<br><br>　-v-<br><br><br>CUMMINS, INC.<br>500 Jackson Street<br>Columbus, IN 47201<br><br>　　Registered Agent:<br>　　Corporation Service Company<br>　　50 West Broad Street, Suite 1330<br>　　Columbus, OH 43215<br><br>　　　　　　　Defendant,<br><br>KNIGHT-SWIFT TRANSPORTATION<br>HOLDINGS, INC.<br>2200 South 75th Street<br>Phoenix, AZ 85043<br><br>　　Registered Agent:<br>　　National Registered Agents, Inc.<br>　　160 Greentree Drive, Suite 101<br>　　Dover, DE 19904<br><br>　　　　　　　Defendant,<br><br>SWIFT LEASING CO., LLC<br>2200 South 75th Street<br>Phoenix, AZ 85043<br><br>　　Registered Agent:<br>　　National Registered Agents, Inc.<br>　　4400 East Commons Way, Suite 125<br>　　Columbus, OH 43219<br><br>　　　　　　　Defendant, | CASE NO. 1:18-cv-871<br><br>(Judge _____)<br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

1

| | |
|---|---|
| INTERSTATE EQUIPMENT LEASING, LLC<br>180 Greentree Drive, Suite 101<br>Dover, DE 19904<br><br>    Registered Agent:<br>    National Registered Agents, Inc.<br>    160 Greentree Drive, Suite 101<br>    Dover, DE 19904<br><br>                 Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Bush Truck Leasing, Inc., for its Complaint against Defendants Cummins, Inc., Knight-Swift Transportation Holdings, Inc., Swift Leasing Co., LLC, and Interstate Equipment Leasing, LLC, states and alleges as follows:

## PARTIES

1.    Bush Truck Leasing, Inc. is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 6961 Cintas Boulevard, Mason, Ohio.

2.    Cummins, Inc. is a corporation organized under the laws of the State of Indiana, with its principal place of business located at 500 Jackson Street, Columbus, Indiana.

3.    Knight-Swift Transportation Holdings, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2200 South 75th Street, Phoenix, Arizona.

4.    Swift Leasing Co., LLC is a limited-liability company organized under the laws of the State of Delaware, with its principal place of business located at 2200 South 75th Street, Phoenix, Arizona. The sole member of Swift Leasing Co., LLC is Swift Transportation Co. of Arizona, LLC, a limited-liability company organized under the laws of the State of Delaware, with its principal place of business located at 180 Greentree Drive, Suite 101, Dover, Delaware. The sole member of Swift Transportation Co. of Arizona, LLC is Swift Transportation Co., LLC, a

2

limited-liability company organized under the laws of the State of Delaware, with its principal place of business located at 180 Greentree Drive, Suite 101, Dover, Delaware. The sole member of Swift Transportation Co., LLC is Swift Transportation Co., Inc., a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2200 South 75th Street, Phoenix, Arizona.

5. Interstate Equipment Leasing, LLC is a limited-liability company organized under the laws of the State of Delaware, with its principal place of business located at 180 Greentree Drive, Suite 101, Dover, Delaware. The sole member of Interstate Equipment Leasing, LLC is Swift Transportation Co., Inc., a corporation organized under the laws of the State of Delaware, with its principal place of business located at 2200 South 75th Street, Phoenix, Arizona.

6. Swift Leasing Co., LLC and Interstate Equipment Leasing, LLC are subsidiaries of Knight-Swift Transportation Holdings, Inc., the parent company.

## JURISDICTION AND VENUE

7. This Court has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Bush Truck Leasing, Inc.; Cummins, Inc.; Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC.

8. This Court has personal jurisdiction over Cummins, Inc. because of its contacts with the Southern District of Ohio, which arise from transacting business and causing tortious injury in Ohio.

9. This Court has personal jurisdiction over Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC because of their contacts

with the Southern District of Ohio, which arise from transacting business and causing tortious injury in Ohio.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Cummins, Inc.; Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC reside in the Southern District of Ohio for venue purposes and because a substantial part of the events or omissions giving rise to Bush Truck Leasing, Inc.'s claims occurred in the Southern District of Ohio.

## STATEMENT OF FACTS

11. Bush Truck Leasing, Inc. ("Plaintiff" or "BTL") is engaged in the business of financing and leasing commercial vehicles to independent contractors involved in pick-up, delivery, and transportation services.

12. Because it can be cost prohibitive for independent contractors to purchase and lease trucks, BTL bridges the gap between independent contractor's financial constraints and the needs of delivery and transport companies by financing and leasing trucks.

13. Cummins, Inc. ("Cummins") designs, manufactures, distributes, services, and markets engines and engine-related component products for light-duty automotive, medium- and heavy-duty trucks and busses.

14. Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC (collectively "Swift") are engaged in the truckload motor shipping carrier business and are also engaged in the business of selling, financing, and leasing a variety of tractors, trailers, and commercial vehicles to companies and individual independent contractors.

15. Between approximately 2009 and 2014, Cummins used ceramic-coated fuel pump tappets and brass roller pin tappets in its ISX engines.

16.     From July 28, 2015 through July 28, 2017, BTL purchased approximately 149 trucks from Swift, each equipped with a Cummins ISX engine manufactured between 2009 and 2014.

17.     BTL paid over $9,000,000.00 in total consideration to Swift for the 149 trucks.

18.     During purchase negotiations, Swift represented that its trucks were reliable, in good condition, and free from defect. For example, representatives of Swift, including, but not limited to, James Ramage and Erek Starnes, represented that all recalls on the trucks were up-to-date and that all maintenance service had been completed. Based on those representations, BTL purchased 149 trucks from Swift.

19.     In accordance with its business model, after purchasing the trucks, BTL leased the trucks to various individuals (independent contractors) and companies, often utilizing a network of corporate sponsors who referred prospective and existing independent contractors to BTL.

20.     In or around April 2017, BTL discovered that certain trucks it had purchased were equipped with defective Cummins ISX engines, after certain trucks with Cummins ISX engines began experiencing engine problems, causing the engines to inexplicably stall and rendering the trucks inoperable.

21.     Specifically, BTL subsequently discovered the ceramic-coated fuel pump tappets and rollers prematurely fractured, delaminated, and failed, making them unfit for their ordinary and intended use, and often causing progressive and significant damage to other engine components.

22.     Shortly after discovering the defect, BTL notified Swift and Cummins of the defect in the ISX engines.

23. When BTL first approached Cummins about the defective ISX engines, BTL learned that Cummins was already aware of the defect. In fact, upon information and belief, Cummins became aware of the defect in its ISX engines as early as 2014.

24. Despite knowing of the defect, upon information and belief Cummins continued to manufacture, distribute, and market its defective ISX engines, representing that the engines were of good quality and fit for their ordinary, intended use.

25. Rather than issuing a recall, Cummins issued Warranty Memos and Technical Service Bulletins—which were not directed to BTL and which BTL did not receive—containing mechanical details for how to inspect and replace the defective ceramic-coated fuel pump pumping plunger and/or roller tappet assembly.

26. Sometime after Cummins discovered the defect, Cummins began manufacturing ISX engines with fuel pump tappets made of steel (rather than ceramic) and roller pin tappets with a diamond-like (hardened) substance, rather than brass.

27. Although BTL became the record owner of 149 trucks equipped with Cummins ISX engines between July 28, 2015 and July 28, 2017, Cummins never informed BTL of the engine defect, or of its drastic shift in manufacturing design as a result of the engine defect.

28. Upon information and belief, given the volume of trucks Swift purchased with Cummins engines and given Swift's authorization to do Cummins warranty work, Swift knew about, but failed to inform BTL of, the engine defect and also failed to forward to BTL the communications that Swift received from Cummins regarding the engine defect.

29. In or around the summer of 2017, BTL corresponded with representatives of Swift, including, but not limited to, James Ramage and Erek Starnes, who acknowledged the defect in

the engines and indicated that Swift would help facilitate discussions and negotiations between Cummins and BTL.

30. On or about October 30, 2017, Cummins and BTL held a meeting at the BTL corporate offices to address the issues with the Cummins ISX engines in the trucks that BTL purchased (the "October 2017 Meeting"). The attendees at this meeting were Doug Ritchie, Ed Sowers, and Larry Vanover on behalf of BTL, and Kevin Darrow, Wendy Mayhew, and John Campbell on behalf of Cummins.

31. During the October 2017 Meeting, Cummins (through its representatives) acknowledged and admitted that the Cummins ISX engines in the trucks BTL purchased contained defective fuel pump tappets and rollers.

32. During the October 2017 Meeting, Cummins promised it would cover the repair and replacement costs of new tappets and rollers in the Cummins ISX engines that BTL had purchased. Cummins also promised that it would consider paying for progressive damage caused by the clear engine defect.

33. From October 2017 through the beginning of 2018, Cummins began to perform on its promise, paying for repair and replacement costs (as well as some progressive damage) caused by its manufacturing engine defect.

34. On or about February 20, 2018, however, Cummins reneged on its unambiguous promise and representations and informed BTL that it would no longer make contributions to remedy the damages caused by the defective engines.

35. As a result of the Cummins' defective ISX engines and the misrepresentations made by Cummins and Swift, BTL has incurred millions of dollars in damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs

of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## COUNT ONE
### (Implied Warranty in Tort against Cummins)

36. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

37. A defect exists in the Cummins ISX engines, which make the engines unfit for their ordinary, intended use. Indeed, in the October 2017 Meeting Cummins expressly acknowledged and admitted this defect.

38. Specifically, the Cummins ISX engines' ceramic-coated fuel pump tappets and rollers prematurely fracture, delaminate, and fail, often causing progressive damage to other engine components.

39. The defect in the ISX engines existed at the time the engines left Cummins' possession.

40. The defects and nonconformities exhibited in each of the ISX engines constitute a breach of Cummins' common-law obligations and duties in tort, including the duty to design, manufacture, and construct the ISX engines so that the fuel pump tappets and rollers were free of defect and would not create an unreasonable risk of abrupt engine failure.

41. As a direct and proximate cause of Cummins' breach of its implied warranties in tort, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

42. At all times relevant hereto, Cummins intentionally, willfully, wantonly, and maliciously breached its implied warranties in tort, entitling BTL to an award of punitive damages.

## COUNT TWO
### (Fraud/Intentional Misrepresentation against Cummins)

43. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

44. Cummins represented that its engines were free from defect and reliable. For example, between March 2016 and June 2017 Cummins represented on its website that its engines were "dependable and durable." Likewise, between May and July of 2017 Cummins represented on its website that its engines were the "most bulletproof, reliable, and durable engines available." Upon information and belief, Cummins continually made these and other similar representations about the quality of its engines from July 2015 through July 2017.

45. Cummins' misrepresentations were material and each representation was made falsely, with knowledge of its falsity, or with utter disregard and recklessness as to whether it was true or false.

46. In fact, Cummins became aware of the defect in its ISX engines as early as 2014.

47. Despite knowing of the defective ISX engines, Cummins continued to manufacture, distribute, and market these engines.

48. Cummins also continued to represent that the engines were of good quality and fit for their ordinary, intended use, knowing that those representations were false or with utter disregard and recklessness as to whether those representations were true or false.

49. Cummins made the misrepresentations regarding the quality of its ISX engines with the intent of misleading others, like BTL, into relying upon the misrepresentations.

50. BTL justifiably relied on Cummins' misrepresentations by purchasing and leasing trucks with Cummins ISX engines.

51. As a direct and proximate cause of BTL's reliance on Cummins' fraudulent and intentional misrepresentations, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, property damage and repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

52. At all times relevant hereto, Cummins fraudulently, intentionally, willfully, wantonly, and maliciously made intentional misrepresentations regarding the quality of its ISX engines, entitling BTL to an award of punitive damages.

## **COUNT THREE**
**(Fraud/Intentional Misrepresentation against Cummins)**

53. Additionally, on or about October 30, 2017 Cummins also represented and promised that it would cover repair and replacement costs that BTL incurred as a result of the defective engines, as well as make additional potential contributions to BTL for any progressive damage.

54. Cummins' misrepresentation was material and Cummins made it falsely, with knowledge of its falsity, or with utter disregard and recklessness as to whether it was true or false.

55. Cummins made the misrepresentation with the intent of misleading BTL into relying upon the misrepresentation.

56. BTL justifiably relied on Cummins' misrepresentation by continuing to market and lease trucks with the defective Cummins ISX engines to independent contractors, and expending significant sums of money repairing trucks with the defective Cummins ISX engines.

57. As a direct and proximate cause of BTL's reliance on Cummins' fraudulent and intentional misrepresentations, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

58. At all times relevant hereto, Cummins fraudulently, intentionally, willfully, wantonly, and maliciously made intentional misrepresentations regarding Cummins' intention to contribute financially to the replacement and repair costs that BTL incurred, entitling BTL to an award of punitive damages.

## COUNT FOUR
### (Negligent Misrepresentation against Cummins)

59. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

60. Cummins, in the course of its business and in transactions in which it had a pecuniary interest, represented that its engines were free from defect and reliable. For example, between March 2016 and June 2017 Cummins represented on its website that its engines were "dependable and durable." Likewise, between May and July of 2017, Cummins represented on its website that its engines were the "most bulletproof, reliable, and durable engines available." Upon information and belief, Cummins continually made these and other similar representations about the quality of its engines from July 2015 through July 2017.

61. Cummins made these representations, which were false, for the guidance of others, like BTL, in their business transactions.

11

62. In making said misrepresentation, Cummins failed to exercise reasonable care or competence in obtaining or communicating information regarding the quality and reliability of its ISX engines.

63. BTL justifiably relied on Cummins' misrepresentations by purchasing and leasing trucks with Cummins ISX engines.

64. As a direct and proximate cause of BTL's reliance on Cummins' negligent misrepresentations, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## **COUNT FIVE**
**(Negligent Misrepresentation against Cummins)**

65. Additionally, on or about October 30, 2017 Cummins also represented and promised that it would cover repair and replacement costs that BTL incurred as a result of the defective engines, as well as make additional potential contributions to BTL for any progressive damage.

66. Cummins supplied that information, which was false, for the guidance of BTL in its business transactions.

67. In making said misrepresentation, Cummins failed to exercise reasonable care or competence in obtaining or communicating Cummins' willingness to and the extent to which it would contribute financially to the replacement and repair costs that BTL incurred.

68. BTL justifiably relied on Cummins' misrepresentation by continuing to market and lease trucks to independent contractors with the defective Cummins ISX engines, and expending significant sums of money repairing trucks with the defective Cummins ISX engines.

12

69. As a direct and proximate cause of BTL's reliance on Cummins' negligent misrepresentations, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## COUNT SIX
**(Violation of the Ohio Deceptive Trade Practices Act against Cummins)**

70. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

71. Cummins made statements of fact concerning the quality of its ISX engines, which were false and/or misleading.

72. Specifically, Cummins represented that its ISX engines were free from defect and reliable. For example, between March 2016 and June 2017 Cummins represented on its website that its engines were "dependable and durable." Likewise, between May and July of 2017, Cummins represented on its website that its engines were the "most bulletproof, reliable, and durable engines available." Upon information and belief, Cummins continually made these and other similar representations about the quality of its engines from July 2015 through July 2017.

73. Cummins' false and/or misleading statements actually, or tended to, deceive a substantial portion of the intended audience.

74. Cummins' false and/or misleading statement was material in that it likely influenced the deceived consumer's purchasing decisions.

75. Cummins' false and/or misleading statements were introduced into interstate commerce.

76. As a direct and proximate cause of Cummins' false and/or misleading statements regarding the quality of its ISX engines, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

77. At all times relevant hereto, Cummins fraudulently, intentionally, willfully, wantonly, and maliciously made false and/or misleading statements concerning the quality of its ISX engines, entitling BTL to an award of punitive damages.

### COUNT SEVEN
### (Promissory Estoppel against Cummins)

78. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

79. On or about October 30, 2017, Cummins clearly and unambiguously promised that it would cover repair and replacement costs that BTL incurred as a result of the defective engines, as well as make additional potential contributions to BTL for any progressive damage.

80. In reasonable and foreseeable reliance on Cummins' promise, BTL continued to purchase, market, and lease trucks with the defective Cummins ISX engines to independent contractors, and expended significant sums of money repairing trucks with the defective Cummins ISX engines.

81. As a direct and proximate result of BTL's reliance on Cummins' promise, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged

by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## COUNT EIGHT
### (Fraud/Intentional Misrepresentation against Swift)

82. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

83. During purchase negotiations, Swift represented that the trucks it sold to BTL were reliable, in good condition, and free from defect. For example, Swift represented that all recalls on the trucks were up-to-date and that all maintenance service had been completed.

84. In addition to making affirmative misrepresentations, Swift had a duty to disclose the existence of the engine defect but fraudulently concealed it.

85. Despite knowing of the engine defect, Swift made a partial disclosure of the condition of the trucks to BTL, creating a misimpression that the trucks were in good condition and did not have any defects.

86. Despite knowing of the engine defect, Swift failed to disclose the existence of the engine defect, which was a material fact affecting the value of the trucks.

87. Swift's misrepresentations and concealments were material and each representation was made falsely, with knowledge of its falsity, or with utter disregard and recklessness as to whether it was true or false.

88. In fact, upon information and belief, Swift became aware of the engine defect in the trucks as early as May 2014.

89. Despite knowing of the defective ISX engines, Swift sold at least 149 trucks to BTL between July 28, 2015 and July 28, 2017, representing that the trucks were in good condition and failing to disclose that each of the trucks were equipped with defective engines.

15

90. Swift made the misrepresentations regarding the quality of its trucks and concealed the existence of the engine defect with the intent of misleading BTL into relying upon those misrepresentations and fraudulent concealments.

91. BTL justifiably relied on Swift's misrepresentations and fraudulent concealments by purchasing 149 trucks with defective Cummins ISX engines.

92. BTL did not discover—and could not have discovered—the engine defect during a reasonable visual inspection of the trucks.

93. Had BTL known that the 149 trucks it purchased from Swift were equipped with defective engines, BTL would not have agreed to purchase those trucks and would not have paid over $9,000,000.00 for those trucks.

94. As a direct and proximate cause of BTL's reliance on Swift's fraudulent and intentional misrepresentations and concealments, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, property damage and repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

95. At all times relevant hereto, Swift fraudulently, intentionally, willfully, wantonly, and maliciously made intentional misrepresentations regarding the quality of its trucks and fraudulently concealed the existence of the engine defect, entitling BTL to an award of punitive damages.

## COUNT NINE
**(Negligent Misrepresentation against Swift)**

96. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

97. Swift, in the course of its business and in transactions in which it had a pecuniary interest, represented that its trucks were reliable, in good condition, and free from defect.

98. Swift made these representations, which were false, for the guidance of BTL in its business transactions.

99. In making said misrepresentation, Swift failed to exercise reasonable care or competence in obtaining or communicating information regarding the quality, reliability, and condition of its trucks.

100. BTL justifiably relied on Swift's misrepresentations by purchasing 149 trucks equipped with defective Cummins ISX engines.

101. As a direct and proximate cause of BTL's reliance on Swift's negligent misrepresentations, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## COUNT TEN
**(Breach of Express Warranty against Swift)**

102. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

103. Before and at the time BTL agreed to purchase 149 trucks from Swift, Swift made affirmations of fact regarding the reliability and condition of its trucks, which formed the basis for the bargain between the parties and created an express warranty that the trucks were reliable, in good condition, and free from defect.

104. BTL performed all of its obligations under the contracts and rendered payments totaling over $9,000,000.00 to Swift.

105. The trucks BTL purchased from Swift did not comply with the express warranties because each of the 149 trucks were equipped with a defective engine.

106. Upon learning that the trucks did not conform to Swift's express warranties, BTL notified Swift of the defective engines.

107. As a direct and proximate cause of Swift's breach of the express warranties, BTL has incurred significant damages, including, but not limited to, repair and replacement costs of the defective engine component, repair and replacement costs of other engine components damaged by the defect, loss in market value, loss in lease revenue, transportation and recovery costs for inoperable trucks, and damage to its reputation in the marketplace.

## COUNT ELEVEN
### (Unjust Enrichment against Swift)

108. BTL incorporates by reference each and every paragraph contained in this Complaint, as if fully restated herein.

109. Pleading in the alternative, BTL conferred benefits on Swift, with Swift's knowledge and consent, by providing Swift with significant sums of money in exchange for 149 trucks.

110. Swift has retained the benefits of those payments even though each of the 149 trucks that BTL purchased from Swift have a defective engine.

111. Because it would be unjust for Swift to retain the benefits of over $9,000,000.00 in payments, BTL is entitled to receive damages in the amount that Swift has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bush Truck Leasing, Inc. prays for the following relief:

(a)     Judgment against Cummins, Inc. for Implied Warranty in Tort (Count One) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, punitive damages, and such other and further relief as may be fair and just;

(b)     Judgment against Cummins, Inc. for Fraud/Intentional Misrepresentation (Count Two and Count Three) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, punitive damages, and such other and further relief as may be fair and just;

(c)     Judgment against Cummins, Inc. for Negligent Misrepresentation (Count Four and Count Five) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, and such other and further relief as may be fair and just;

(d)     Judgment against Cummins, Inc. for Violation of the Ohio Deceptive Trade Practices Act (Count Six) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, punitive damages, and such other and further relief as may be fair and just;

(e)     Judgment against Cummins, Inc. for Promissory Estoppel (Count Seven) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, and such other and further relief as may be fair and just.

(f)     Judgment against Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC for Fraud/Intentional Misrepresentation (Count Eight), rescission of the contracts, and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, punitive damages, and such other and further relief as may be fair and just;

(g) Judgment against Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC for Negligent Misrepresentation (Count Nine) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, and such other and further relief as may be fair and just;

(h) Judgment against Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC for Breach of Express Warranty (Count Ten) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, and such other and further relief as may be fair and just;

(i) Judgment against Knight-Swift Transportation Holdings, Inc.; Swift Leasing Co., LLC; and Interstate Equipment Leasing, LLC for Unjust Enrichment (Count Eleven) and damages in an amount that exceeds $75,000 to be determined at trial, plus interest, costs, attorneys' fees, and such other and further relief as may be fair and just.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BTL requests a trial by jury of any issues so triable by right.

Respectfully submitted,

*/s/ Gregory M. Utter*
Gregory M. Utter (0032528)
Jacob D. Rhode (0089636)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
gmutter@kmklaw.com
jrhode@kmklaw.com

*Attorneys for Plaintiff Bush Truck Leasing, Inc.*

8732986.5