IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | | |
|---|---|---|
| BUSH TRUCK LEASING, INC., | : | Case No. 1:18-cv-871 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CUMMINS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS (DOC. 16)**

This case is before the Court on the Motion to Dismiss for Failure to State a Claim (Doc. 3) filed by Defendants Knight-Swift Transportation Holdings Inc., Swift Leasing Co. LLC, and Interstate Equipment Leasing, LLC (collectively, "Swift"). For the reasons stated below, the Motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff Bush Truck Leasing, Inc. ("BTL") alleges as follows, all of which is taken as true for purposes of this motion. Over the span of two years (July 2015—July 2017), BTL spent over $9,000,000 purchasing 149 trucks from Swift. Each truck, however, came pre-equipped with a Cummins ISX engine manufactured by the co-defendant, Cummins, Inc. According to BTL, Swift made representations during purchase negotiations that the trucks were "reliable, in good condition, and free from defect."

(Doc. 1 at ¶ 18.) But in April 2017, BTL discovered that some of the trucks' engines were defective, rendering the trucks inoperable. (Doc. 1 at ¶ 20.)

BTL subsequently filed this lawsuit on December 10, 2018, alleging seven counts against Cummins, Inc., and four counts against Swift. The four counts against Swift are: **Count Eight** for Fraud/Intentional Misrepresentation; **Count Nine** for Negligent Misrepresentation; **Count Ten** for Breach of Express Warranty; and **Count Eleven** for Unjust Enrichment. (*Id.*) In response, Swift filed a Motion to Dismiss for Failure to State a Claim (Doc. 16). BTL filed a Response in Opposition (Doc. 23), to which Swift filed a Reply (Doc. 24), making this matter ripe for the Court's review.

Although Swift's motion to dismiss is supported on various grounds, the Court need only address two of Swift's arguments to rule on the motion. First, Swift argues that BTL has not asserted its fraud and negligent misrepresentation claims with the particularity required under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). (Doc. 16.) And second, Swift argues that the disclaimer contained in the invoice issued for the purchase of all 149 engines bars BTL's claims as a matter of law. (*Id.* at fn. 2.) Swift attached a copy of the invoice (the "Invoice") as an exhibit to its motion to dismiss. (Doc. 16-1.)

## ANALYSIS

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The Court

need not accept as true, however, "a legal conclusion couched as a factual allegation." *Id*. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When making this determination, the court may consider the "Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

I. **Count Eight - Fraud/Intentional Misrepresentation**

In Count Eight of its Complaint, BTL alleges that Swift committed fraud when it represented that its trucks were "reliable, in good condition, and free from defect" even though Swift allegedly knew that the Cummins' engines were defective. (Doc. 1 at ¶¶ 18, 28.) Swift makes several arguments why Count Eight should be dismissed. (Doc. 16.) Most notably, Swift argues that BTL's fraud claim is not stated with sufficient particularity to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). (*Id.* at p. 6.) Swift further argues that BTL's fraud claim should be dismissed because the

3

"as is" clause contained in the Invoice vitiates the necessary element of "justifiable reliance," and that any claim for fraud is barred by the economic loss doctrine. The Court will first address whether BTL satisfied Rule 9(b)'s heightened pleading standard.

> **A.   BTL Fails to Plead its Fraud Claim with the Particularity Required Under Rule 9(b)'s Heightened Pleading Standard**

Due to the "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n. 14, parties alleging fraud or misrepresentation are held to a heightened pleading standard. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, or other conditions of a person's mind may be alleged generally."). Under Rule 9(b), "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation [to allow] the defendants to answer, addressing in an informed way [the] plaintiffs claim of fraud." *Id.* (internal citations omitted). And while intent can be pled generally, the factual allegations still must be sufficient to support a plausible inference of the requisite intent. *See Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012); *Rheinfrank v. Abbot Labs.*, No. 1:13-CV-144, 2013 WL 4067826, at *4 (S.D. Ohio Aug. 12, 2013) ("Scienter may be alleged generally, but there must be factual allegations to make scienter plausible.").

4

The Sixth Circuit has interpreted Rule 9(b) to mean that—at minimum—a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 983 (6th Cir. 2017) (*citing Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008)). Rule 9(b) applies with equal force to fraud claims premised on an omission or a failure to disclose. *Id*. Lastly, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (*citing Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir.2006)).

BTL fails to meet the heightened pleading standard of Rule 9(b) for several reasons. The bulk of BTL's factual allegations in support of its fraud claim are all contained in one paragraph of the Complaint, which states—in its entirety—that:

> During purchase negotiations, Swift represented that its trucks were reliable, in good condition, and free from defect. For example, representatives of Swift, including, but not limited to, James Ramage and Erek Starnes, represented that all recalls on the trucks were up-to-date and that all maintenance service had been completed. Based on those representations, BTL purchased 149 trucks from Swift.

(Doc. 1 at ¶ 18.) The only other substantive allegation BTL pleads in support is that "[u]pon information and belief, given the volume of trucks Swift purchased with Cummins engines and given Swift's authorization to do Cummins warranty work, Swift knew about, but failed to inform BTL of, the engine defect and also failed to

5

forward to BTL the communications that Swift received from Cummins regarding the engine defect." (*Id.* at ¶ 28.)

As an initial matter, the Sixth Circuit has held that "[g]eneralized, subjective terms like 'quality' and 'reliability' are plainly self-serving opinions, puffery on which no buyer would reasonably rely." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 564 (6th Cir. 2013) (*quoting Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 1009 (7th Cir.2004) ("A generic promise to provide 'high quality' services cannot therefore be the basis of a mail fraud claim."); and *Summit Tech., Inc. v. High–Line Med. Instruments, Co.,* 933 F. Supp. 918, 931 (C.D.Cal.1996) ("The word 'reliable' is inherently vague and general in common parlance akin to a statement that the machine is 'fine.'"); *see also Bobb Forest Prod., Inc. v. Morbark Indus., Inc.*, 151 Ohio App. 3d 63, 2002-Ohio-5370, 783 N.E.2d 560, ¶ 50 (7th Dist.) ("For example, statements that a car 'performed fine,' was 'good on gas,' or was a 'good choice' are mere sales talk and, therefore, are merely puffing." (internal citations omitted)). The only actionable statement BTL therefore alleges is that Swift represented that the engines were "free from defect." (Doc. 1 at ¶ 18.) Yet the only factual allegation BTL pleads in support of this claim is that "James Ramage and Erek Starnes, represented that all recalls on the trucks were up-to-date and that all maintenance service had been completed." (Doc. 1 at ¶ 18.) But stating that all "recalls are up-to-date and all maintenance has been completed" is not the same as promising that the trucks are "free from defect."

Even if the analytical gap between BTL's allegations and its contention that Swift committed fraud were small enough for the Court to hurdle—it is not—BTL

6

additionally fails to allege that Swift's representations were in fact false. Mr. Ramage and Mr. Starnes' statements—that all recalls were up to date and all maintenance was complete—refer to the state of the trucks' service history *at the time of the sale*. *See Morris*, 536 F. App'x at 564 (noting the importance of the timing of the misrepresentation). BTL does not allege that the trucks were *not* up to date on their service requirements when they were sold. Thus, BTL has also failed to allege that the statements were false.

Nor does BTL allege any contextual details that would support such an inference. First, BTL fails to identify *when* the statements were made, only that they were made "during purchase negotiations." (Doc. 1 at ¶ 18.) But over the span of two years, BTL purchased 149 trucks from Swift. (*Id*. at ¶ 16.) Thus, the term "purchase negotiations" could mean any time from July 28, 2015 through July 28, 2017. (*Id*.) Second, BTL fails to allege *where* the statements were made. BTL's principal place of business is located in Mason, Ohio, while Knight-Swift Transportation Holdings, Inc., and Swift Leasing Co., LLC, are incorporated under the laws of the State of Delaware with their principal places of business in Phoenix, Arizona. (*Id*. at ¶¶ 1-5.) Interstate Equipment Leasing, LLC, is incorporated under the laws of the State of Delaware with its principal places of business in Dover, Delaware. (*Id*.) Therefore, according to BTL, the purported misrepresentations presumptively occurred at some point between July 28, 2015 and July 28, 2017, in either Mason, Ohio, Phoenix, Arizona, or somewhere in Delaware. Such broad pleadings fail to meet the minimum requirements for pleading fraud set forth by the Sixth Circuit, which has found that such "[v]ague allegations of generic

7

misrepresentations or omissions are not sufficient to survive a Rule 12(b)(6) challenge." *Beaumont*, 677 F. App'x at 983.

BTL also fails to support the assertion that it relied on the alleged misrepresentations in making its purchasing decision. BTL merely puts forth one broad conclusory sentence: "[b]ased on those representations, BTL purchased 149 trucks from Swift." (Doc. 1 at ¶ 18.)

Lastly, BTL fails to plead facts from which the Court can infer fraudulent intent. There are no allegations, for example, demonstrating that Swift knew that its representations were false. BTL merely alleges that "[u]pon information and belief, given the volume of trucks Swift purchased with Cummins engines and given Swift's authorization to do Cummins warranty work, Swift knew…" (Doc. 1 at ¶ 28.) Although a plaintiff may plead intent generally under Rule 9(b), the "Sixth Circuit has held that plaintiffs 'may not simply rely on the proposition that Defendants must have known or should have known of, and participated in, the fraud.'" *In re Nat'l Century Fin. Enterprises, Inc.*, 504 F. Supp. 2d 287, 317 (S.D. Ohio 2007) (*citing Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001)); *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990) (holding that the "bare inference that the defendant 'must have had' knowledge of the facts" does not satisfy Rule 9(b)); *see also Albert Fadem Trust v. American Elec. Power Co.,* Inc. 334 F.Supp.2d 985, 1013 (S.D. Ohio 2004) (same).

In defense, BTL cites two unpublished district opinions: *Rheinfrank v. Abbot Labs.*, No. 1:13-cv-144-SJD, 2013 U.S. Dist. LEXIS 113289, at *10, 2013 WL 4067826 (S.D. Ohio Aug. 12, 2013) and *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2015 U.S. Dist. LEXIS

8

41937, at *42, 2015 WL 1474985 (S.D. Ohio Mar. 31, 2015). (Doc. 23 at p. 5.) But this Court finds the abundance of Sixth Circuit opinions regarding similar circumstances much more persuasive. *See e.g., Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (affirming motion to dismiss when "vague at best" complaint contained allegations that were "purely conclusory" and "[did] not properly set out allegations of plaintiffs' reliance on defendants' supposed misrepresentations."); *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253, 256-57, 260 (6th Cir. 2012) (affirming dismissal of plaintiffs' proposed fraud claim when complaint failed to satisfy Rule 9(b)); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010) (same); *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 983 (6th Cir. 2017) ("complaint does not meet Rule 9(b) standards—all allegations regarding this claim involve vague accusations of fraud and misrepresentation rather than the specific, identifiable statements required by this circuit."); *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (complaint failed to meet particularity requirements of Rule 9(b) when allegation that defendant knew statement was untrue "[was] not made, nor [did] the complaint explain why statement was fraudulent, or clearly identify when and where the statement was made."); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 753 (6th Cir. 2014) (failure to satisfy Rule 9(b), when plaintiff "has not pointed to a false 'representation of a present or past fact' to support an intentional misrepresentation claim."); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) (affirming grant of motion to dismiss when plaintiff failed to satisfy Rule 9(b) heightened pleading requirements); *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 359 (6th Cir. 2014)

(affirming district court's denial of leave to amend complaint and granting motion to dismiss when plaintiff failed to state a claim of fraud with particularity).

Because BTL's Complaint fails to satisfy the heightened pleading standard of Rule 9(b), Swift's motion to dismiss Count Eight is **GRANTED**. Swift's additional grounds for dismissal of this Count need not be addressed at this time.

## II. Count Nine - Negligent Misrepresentation

In Count Nine, BTL relies on the same factual allegations to support a claim of negligent misrepresentation as they do in Count Eight for fraud/intentional misrepresentation. (Doc. 1 at ¶ 96-101.) Likewise, Swift relies on the same arguments to persuade this Court to dismiss Count Nine as they do in Count Eight. (Doc. 16.)

While the parties disagree over whether Rule 9(b) applies to a claim for negligent misrepresentation, the precedent in the Sixth Circuit stands for the proposition that "any claim sounding in fraud—not just those alleging a claim of fraud—must meet Rule 9(b)'s pleading standard." *Davisson v. Ford Motor Co.*, No. 2:13-CV-00456, 2014 WL 4377792, at *8 (S.D. Ohio Sept. 3, 2014) (*citing, inter alia, Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752–53 (6th Cir.2012)). Thus, "when a party brings both fraud and negligent misrepresentation claims but fails to plead an independent basis of liability for each of the claims, courts will apply Rule 9(b)'s standard to both claims." *In re Nat'l Century Fin. Enterprises, Inc.*, 504 F. Supp. 2d 287, 322 (S.D. Ohio 2007). "As one court put it, the 'requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.'" *Id.* (*citing Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md.2000); *see also Republic Bank*

10

*& Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012) (interpreting Kentucky law); *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 777–78 (M.D. Tenn. 2019) ("[T]he current consensus of federal courts is that Rule 9(b) governs negligent misrepresentation claims brought under Tennessee law." (internal citations omitted)); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014).

Because BTL's fraud and negligent misrepresentation claims are premised on the exact same factual allegations, the heightened pleading standard of Rule 9(b) undoubtedly applies. For the same reasons articulated above, BTL's negligent misrepresentation claim fails to meet the heightened pleading standard of Rule 9(b). Accordingly, Swift's motion to dismiss Count Nine is **GRANTED**.

### III. Count Ten - Breach of Express Warranty

In Count Ten, BTL alleges that Swift created an express warranty when they represented that the trucks were "reliable, in good condition, and free from defect." (Doc. 1 at ¶ 103.) Swift seeks dismissal of this claim on the grounds that: (1) such generalized statements are insufficiently specific to form an actionable warranty; and (2) the "as is" clause of the Invoice bars any claims for express warranty. (Doc. 16.)

#### A. BTL's Express Warranty Claim is Pled with Sufficient Specificity to Survive Swift's Motion to Dismiss

It is undisputed between the parties that this case is governed by the Uniform Commercial Code ("UCC") as adopted by Ohio. "To state a claim for breach of warranty under the UCC, a plaintiff must allege: (1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with

11

reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010).

"An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase." *Wagner v. Roche Labs.*, 85 Ohio St. 3d 457, 459, 709 N.E.2d 162, 164 (1999) (*citing Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612 (1958)). Under Ohio law:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

O.R.C. § 1302.26(A)(1)-(3). Formal words such as "warrant" or "guarantee" are not necessary to create an express warranty, and the seller need not intend to make a warranty. O.R.C. § 1302.26(B).

The existence of an express warranty "depends upon the particular circumstances in which the language is used and read." *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982) (applying Kentucky law). The existence of a warranty, standing alone, is "insufficient to sustain an action for breach of an express warranty." *Id*. At 1291. Instead, the warranty must be "part of the basis of the bargain." *Id.*; *see also* O.R.C. § 1302.26(A)(1)-(3). Whether a warranty becomes a part of the basis of

12

the bargain depends on: (1) the reasonableness of the buyer in believing the seller; (2) the reliance placed on the seller's statement by the buyer; and (3) whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing. *See Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prod. Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *16 (S.D. Ohio Mar. 22, 2007) (*citing Abele v. Bayliner Marine Corp.,* 11 F. Supp. 2d 955, 963 (N.D. Ohio 1997); *Norcold, Inc. v. Gateway Supply Co.,* 154 Ohio App.3d 594, 600 (2003); *Slyman v. Pickwick Farms,* 15 Ohio App.3d 25, 28 (1984)).

Generally, courts have held that "[t]he trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case." *Overstreet*, 669 F.2d at 1290. However, Ohio law also distinguishes between serious representations and commercial puffery. "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Jordan v. Paccar, Inc.*, 37 F.3d 1181, 1185 (6th Cir. 1994) (*citing* O.R.C. § 1302.26(B)). And as discussed above, under Ohio law and Sixth Circuit precedent, the terms "reliable" and "in-good-condition" are designated as self-serving opinions, mere "puffery on which no buyer would reasonably rely." *Morris*, 536 F. App'x at 564; *see also Bobb Forest*, 151 Ohio App. 3d 63 at ¶ 50 ("For example, statements that a car 'performed fine,' was 'good on gas,' or was a 'good choice' are 'mere sales talk' and, therefore, are merely puffing."). Therefore, the only actionable statement that could constitute an express warranty here is Swift's alleged affirmation that the trucks were "free from defect." (Doc. 1 at ¶ 103.)

13

Swift contends that stating the trucks were "free from defect" is still not sufficiently specific to form an actionable express warranty as a matter of law. (Doc. 24 at p. 9.) However, this Court finds that such a determination would be premature at this stage of litigation, as Swift fails to cite to any case law persuading us to the contrary. The Court finds most persuasive the analogous case of *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 957 (N.D. Ohio 2009), *as amended* (Nov. 4, 2009). There, the defendant filed a motion to dismiss challenging the sufficiency of the plaintiffs' allegation that defendant "marketed and advertised the Washing Machines as being free from Mold Problems and other defects." *Id.* at 957-58. The defendant argued that such a "bald allegation, without any factual support" warranted dismissal under Rule 12(b)(6). The court held that, unlike fraud claims, when pleading a breach of warranty claim, specific facts are not necessary and the plaintiff's allegation was thus sufficient to put the defendant on notice of the alleged warranty breach. *Id.* (*citing Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). Likewise, here, when viewed in a light most favorable, BTL has pled sufficient facts to put Swift on notice of its alleged breach of warranty claim.

### B. At this Stage of Litigation, the "As Is" Clause Does Not Bar BTL's Breach of Express Warranty Claim

Swift's second ground for dismissing Count Ten is that the "as is" clause contained in the Invoice should act to bar any express warranty claim. (Doc. 16 at p. 10-11.) To the contrary, BTL argues that the "as is" clause does not bar its express warranty claim because: (1) the Invoice should be "disregarded at this procedural

14

stage" because it is "outside of the pleadings," and (2) even if considered, the Invoice does not represent a fully integrated contract and, thus, Ohio law dictates that preference must be given to the express warranty, rendering the "as is" clause inoperative. (Doc. 23 at p. 15-18.) The Court considers each argument in turn.

### (1) The Court May Consider the Invoice in Determining the Motion to Dismiss

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008). Courts may also look to documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id*.

Here, BTL's alleges in its Complaint that they "purchased approximately 149 trucks" from Swift and "paid over $9,000,000 in total consideration." (Doc. 1 at ¶¶ 17-18.) Plaintiff's lawsuit is based entirely on these transactions. The Invoice, which details and memorializes the sale of one of the trucks, is central to BTL's claims. (Doc. 16-1.) Moreover, the Invoice is therefore implicitly incorporated into the Complaint,

15

and thus may be considered at this stage of litigation. *See Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n. 2 (6th Cir.2008); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999).

### (2) At this Time, there is Insufficient Evidence to Determine if the Invoice Constitutes a Fully Integrated Contract or Not

Swift's second argument—that the "as is" clause bars BTL's express warranty claim—fares no better. As adopted in Ohio, "[t]he Uniform Commercial Code provides that in situations where express warranties are made during the bargain, but then allegedly disclaimed in the actual sales contract, preference is to be given to the express warranties and inconsistent disclaimers are inoperative to the extent they are unreasonable." *Barksdale v. Van's Auto Sales, Inc.*, 62 Ohio App.3d 724, 728, 577 N.E.2d 425, 429 (1989). Thus, "[w]hen a written contract… provides that the goods are sold 'as is' and also disclaims all express and/or implied warranties and such provisions cannot be reasonably construed as consistent with the seller's oral express warranty, the express warranty will prevail and the inconsistent provisions deemed inoperative to the extent they are unreasonable." *Id*.

Swift, however, correctly contends that this limitation is subject to the parol evidence rule and that "[a]ny express warranty may be disclaimed by a written disclaimer *if* the warranty disclaimer is part of a fully integrated contract." (Doc. 16 at p. 10) (*citing Haynes v. George Ballas Buick-GMC*, 6th Dist., No. L-89-168, 1990 Ohio App. LEXIS 5661, at *20-21 (Dec. 21, 1990)) (emphasis added). Swift cites two cases in support of this argument. *Keel v. Toledo Harley Davidson/Buell*, 184 Ohio App.3d 348,

16

2009-Ohio-5190, 920 N.E.2d 1041, ¶11 (6th Dist.) ("The [contract] contained a merger clause…[t]he inclusion of [which] indicates that the writing is fully integrated and it supersedes any previous agreements or understandings between the parties."); *Haynes*, 1990 Ohio App. LEXIS 5661 at \*8 ("we find that it is a fully integrated contract. Therefore, any warranty assumed by the dealer must be a part of the written contract.").

The flaw in Swift's argument is that—while both of the cases they cite involve fully integrated contracts—Swift fails to put forth any evidence here that demonstrates that the Invoice constitutes a fully integrated contract. The Invoice itself leaves open the possibility that the parties could alter its terms, stating, "All equipment listed on this invoice is 'Sold as is' *unless specified in writing*." (Doc. 16-1) (emphasis added). Because the pleadings are uncertain regarding the integration of the parties' agreement and the Court must construe the allegations in the light most favorable to BTL, Swift's Motion to Dismiss Count Ten is **DENIED**.

## IV. Count Eleven - Unjust Enrichment.

In Count Eleven, BTL pleads in the alternative a claim for unjust enrichment, arguing that it would be inequitable for Swift to retain the over $9,000,000 BTL paid since the trucks had defective engines. (Doc. 1 at ¶ 109-11.) Swift seeks dismissal of this claim because unjust enrichment is a quasi-contractual theory of recovery which—as Swift argues—is precluded when a valid enforceable contract exists. (Doc. 16 at p. 11-12.) BTL's counterargument is that it may plead unjust enrichment in the alternative because the validity of any express contract is currently in dispute, most notably due to fraud and bad faith allegedly perpetrated by Swift. (Doc. 23 at p. 18-19.)

17

Under Ohio law, to succeed with a claim of unjust enrichment, a plaintiff must show that: (1) a benefit was conferred by the plaintiff to the defendant; (2) the defendant knew of the benefit; and (3) defendant retained the benefit under circumstances where it would be unjust to do so without payment. *See L&H Leasing Co. v. Dutton*, 82 Ohio App.3d 528, 612 N.E.2d 787, 791 (3rd Dist. 1992) (*citing Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298 (1984)). Because unjust enrichment arises out of a "contract implied in law," it is not a true contract, but rather a "quasi-contract" implied by the court when a party "retains money or benefits which in just and equity belong to another." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012) (*citing Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923, 925–27 (1938)). And "Ohio law does not allow parties to 'seek damages under quasi-contractual theories of recovery' such as a claim of unjust enrichment when a contract governs the relationship." *Id.* (*citing Davis & Tatera, Inc. v. Gray–Syracuse, Inc.*, 796 F.Supp. 1078, 1085 (S.D.Ohio 1992)). Recovery is therefore precluded because the terms of the agreement define the parties' relationship. *Id*.

However, as BTL states, a claim for unjust enrichment may be pled in the alternative "when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Id.* (*citing Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004)). But here, the Court dismissed BTL's fraud claim based on its failure to meet Rule 9(b) pleading requirements. *See e.g.*,

*King v. Hertz Corp.*, No. 1:09 CV 2674, 2011 WL 1297266, at *9 (N.D. Ohio Mar. 31, 2011). Accordingly, BTL's unjust enrichment claim is also **DISMISSED**.

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 3) is **GRANTED** in part and **DENIED** in part. The motion is **DENIED** as to the breach of express warranty claim in Count Ten. The motion is **GRANTED** as to all other remaining claims against Swift. Count Eight for fraud/intentional misrepresentation, Count Nine for negligent misrepresentation, and Count Eleven for unjust enrichment are all **DISMISSED WITHOUT PREJUDICE.**

    IT IS SO ORDERED.

                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF OHIO

                            By:   */s/ Matthew W. McFarland*
                                    JUDGE MATTHEW W. McFARLAND